J-S31010-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
   :   PENNSYLVANIA
   :
v.   :
   :
   :
   :
BRANDON BROWN   :
   :
Appellant   :   No. 183 EDA 2021

Appeal from the Judgment of Sentence entered August 20, 2020
In the Court of Common Pleas of Philadelphia County
Criminal Division at No:  CP-51-CR-0003971-2018

BEFORE:   STABILE, J., KING, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:      **FILED NOVEMBER 16, 2021**

Appellant, Brandon Brown, appeals from the judgment of sentence imposed on August 20, 2020 in the Court of Common Pleas of Philadelphia County following his convictions of third-degree murder, 18 Pa.C.S.A. § 2502(c), and possessing instruments of crime ("PIC"), 18 Pa.C.S.A. § 907.[1] Appellant challenges the sufficiency and weight of the evidence supporting his third-degree murder conviction and contends the trial court abused its

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant purports to appeal from the December 28, 2020 order, which denied his post-sentence motion by operation of law. "In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citation omitted), *appeal denied*, 800 A.2d 932 (Pa. 2002).  We have corrected the caption accordingly.

discretion by failing to consider certain sentencing factors. Following review, we affirm.

The trial court condensed the underlying facts of the case, in the light most favorable to the Commonwealth as verdict winner, as follows:

> [O]n September 22, 2017, [Appellant] had an argument with Kenneth Carter in the lobby of 4445 Holden Street in Philadelphia. The fight was broken up, and [Appellant] got in an elevator and went up to an apartment, retrieved a knife and returned to stab Carter in the leg, then chased him out the door of the building prepared to stab him again. Carter collapsed and died of the stab wound in his leg, which had severed his femoral artery and vein.

Trial Court Opinion, 2/24/20, at 3.

Our review reflects that Appellant was arrested on February 13, 2018, and was charged with murder and PIC. Following a two-day waiver trial in June 2019, Appellant was convicted of third-degree murder and PIC. A presentence investigation was completed. On August 20, 2020, the court sentenced Appellant to 20 to 40 years in prison for third-degree murder, plus five years' probation for PIC. Post-sentence motions were denied by operation of law on December 28, 2020. This timely appeal followed. Both Appellant and the trial court complied with Pa.R.A.P. 1925(a).

Appellant presents the following issues for our consideration:

I.     Was the evidence sufficient to sustain appellant's conviction for third-degree murder where the evidence failed to establish that appellant acted with malice when he fatally stabbed the decedent, who was the first aggressor in a fight, once in the thigh?

II.    Was the verdict of third-degree murder also contrary to the clear weight of the evidence such as to shock one's sense of

- 2 -

justice where the evidence established that the killing was not intentional, the decedent initiated the fight, and the decedent tragically died from a single stab wound to the thigh, supporting at most a verdict of manslaughter?

III. Did the trial court abuse its discretion in sentencing appellant to the maximum sentence possible under the law for third-degree murder where the court failed to consider the circumstances of the crime, appellant's remorse, or any individualized sentencing factor such as appellant's personal characteristics?

Appellant's Brief at 5.

In his first issue, Appellant argues insufficiency of evidence supporting his conviction of third-degree murder. As this Court recognized in *Commonwealth v. Headley*, 242 A.3d 940 (Pa. Super. 2020):

A challenge to the sufficiency of evidence presents a question of law, and as such, the standard of review is *de novo* and the scope of review is plenary. *Commonwealth v. Weimer*, 602 Pa. 33, 977 A.2d 1103, 1104-05 (2009). Additionally:

When presented with a claim that the evidence was insufficient to sustain a conviction, an appellate court, viewing all of the evidence and reasonable inferences therefrom in the light most favorable to the Commonwealth as the verdict winner, must determine whether the evidence was sufficient to enable the factfinder to find that all elements of the offense were established beyond a reasonable doubt.

*Commonwealth v. Woody*, 939 A.2d 359, 361 (Pa. Super. 2007) (citation omitted). "The Commonwealth may sustain its burden by proving the crime's elements with evidence which is entirely circumstantial and the trier of fact, who determines credibility of witnesses and the weight to give the evidence produced, is free to believe all, part, or none of the evidence." *Id.* at 361-62 (internal citation and quotation marks omitted). "As an appellate court, we do not assess credibility nor do we assign weight to any of the testimony of record." *Commonwealth v. Vogelsong*, 90 A.3d 717, 719 (Pa. Super. 2014). "Additionally,

- 3 -

we may not reweigh the evidence or substitute our own judgment for that of the factfinder." ***Commonwealth v. Walker***, 139 A.3d 225, 229 (Pa. Super. 2016).

***Id.*** at 943-44 (cleaned up).

As reflected in above-quoted passage, this Court must determine whether the evidence was sufficient to enable the trial court, as factfinder, to conclude all elements of third-degree murder were established beyond a reasonable doubt. By definition, third-degree murder is any murder that is not first-degree murder (intentional killing) or second-degree murder (killing committed during perpetration of a felony). ***See*** 18 Pa.C.S.A. §2502(a)-(c). "To establish the offense of third degree murder, the Commonwealth need only prove beyond a reasonable doubt that the defendant killed an individual, with legal malice, '*i.e.*, . . . wickedness of disposition, hardness of heart, recklessness of consequences, or a mind lacking regard for social duty.'" ***Commonwealth v. Devine***, 26 A.3d 1139, 1146 (Pa. Super. 2011) (quoting ***Commonwealth v. Johnson***, 719 A.2d 778, 785 (Pa. Super. 1998), *appeal denied*, 739 A.2d 1056 (Pa. 1999) (additional citations omitted)). "[O]ur courts have consistently held that malice is present under circumstances where a defendant did not have an intent to kill, but nevertheless displayed a conscious disregard for an unjustified and extremely high risk that his actions might cause death or serious bodily harm." ***Commonwealth v. Packer***, 168 A.3d 161, 168 (Pa. 2017). Stated differently, unlike first-degree murder, which is an intentional killing, third-degree murder "is an intentional act,

characterized by malice, that results in death, intended or not." *Commonwealth v. Fisher*, 80 A.3d 1186, 1191 (Pa. 2013). A factfinder may infer malice after considering the totality of the circumstances. *Commonwealth v. Thomas*, 656 A.2d 514, 516 (Pa. Super. 1995).

In its Rule 1925(a) opinion, the trial court reviewed the testimony presented at trial, explaining that officers patrolling the area near the Holden Street building were flagged down by persons who directed the officers to a grassy area near the building where Kenneth Carter was lying face down in a pool of blood. The officers transported Carter to a nearby hospital where he was pronounced dead. Trial Court Opinion, 2/24/21, at 5. An associate medical examiner testified that the cause of death was a stab wound to the left thigh, three to four inches deep, that severed Carter's femoral artery and vein, causing Carter to bleed out. *Id.*

The Commonwealth also presented the testimony of Detective Thorsten Lucke, a stipulated expert in video recovery and analysis, who prepared a video compilation of footage from eight different cameras at the Holden Street building. As the court recounted:

> The video compilation begins with [Appellant] and another individual entering the building lobby, followed by [Carter]. An argument erupted in the lobby near the security desk where another individual separated [Appellant and Carter]. [Appellant] got into the elevator, getting off at an upper floor. During that ride, [Appellant] is pacing back and forth and removes the chain around his neck, presumably in preparation for the upcoming fight. [Appellant] is not seen in the elevator again but appears in just moments back on the ground floor. In the meantime, Carter has remained on the ground floor, pacing back and forth.

Surveillance video then catches Carter running through the lobby with a significant amount of blood gushing from his thigh, while further showing [Appellant] chasing Carter out the door, holding a large knife above his head in a position ready to stab again. [Appellant] chases [Carter] through the parking lot then stops and returns to the building. Carter had collapsed several feet from the lot, where he was later found by [the officers].

. . .

Not only was the evidence sufficient, it presented a textbook example of an individual acting with extreme disregard for human life. Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, [Appellant] had an argument with [Carter] in the lobby of 4445 Holden Street. The argument was broken up and [Appellant] got in the elevator, went to an upper floor, obtained a knife, raced down the stairs, stabbed Carter in the leg so hard that it penetrated three to four inches, severing both the femoral artery and vein and then chased the severely bleeding man out the door, wielding the knife above his head, ready to fatally attack again until he saw [] Carter collapse and only then, when this victim was bleeding out did he return to the apartment building—not rendering aid or calling for assistance—letting Carter die of the wounds [Appellant] had inflicted. The evidence was not only sufficient but substantial and compelling and accordingly this claim is without merit.

*Id.* at 5-7 (reference to notes of testimony omitted).

Having viewed all available evidence[2] in a light most favorable to the

Commonwealth as verdict winner, we conclude that the evidence was

---

[2] We acknowledge we did not have the benefit of reviewing Detective Lucke's surveillance video compilation. However, we did have the benefit of reviewing the trial transcripts, including the narrative by Detective Lucke, who compiled the video shown to the trial court and testified as to what was depicted in the video as it was being shown. Appellant does not challenge the accuracy or veracity of Detective Lucke's narrative and, in fact, Appellant cites the notes of testimony setting forth Detective Lucke's narrative. *See* Appellant's Brief at 8.

sufficient to enable the trial judge, as a factfinder, to find that Appellant committed an intentional act, with malice, that resulted in death. The elements of third-degree murder were established beyond a reasonable doubt. Therefore, Appellant's sufficiency challenge fails.

In his second issue, Appellant contends the verdict was against the weight of the evidence. In *Commonwealth v. Widmer*, 744 A.2d 745 (Pa. 2000), our Supreme Court explained:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Id.* at 753 (citations omitted). Further, "[g]enerally, unless the evidence is so unreliable and/or contradictory as to make any verdict based thereon pure conjecture, these types of claims are not cognizable on appellate review." *Commonwealth v. Rossetti*, 863 A.2d 1185, 1191 (Pa. Super. 2004) (quoting *Commonwealth v. Hunter*, 554 A.2d 550, 555 (Pa. Super. 1989)).

Appellant contends that "because he clearly did not intend to kill the victim when he stabbed him once in the leg during a mutual fight, the court's verdict in the instant case is so contrary to the clear weight of evidence as to shock one's sense of justice." Appellant's Brief at 21. Initially, we note that

Appellant misapprehends the elements of third-degree murder. Third-degree murder does not involve an intent to kill. Intent to kill is an element of first-degree, not third-degree, murder. Rather, as noted above, third-degree involves "an intentional act, characterized by malice, that results in death, intended or not." *Fisher*, 80 A.3d at 1191.

The trial court "reviewed the entire record, including a thorough reading of the trial transcripts and admitted exhibits," and concluded "that the verdict was not so contrary to the evidence as to shock one's sense of justice, nor was it so tenuous, vague and uncertain that it shocks the conscience of the court." Trial Court Opinion, 2/24/21, at 9. The court determined that "the evidence in the case was compelling and substantial, and strongly supported the verdict." *Id.* Based on our own review, we discern no abuse of discretion in the trial court's conclusion. Appellant's weight of the evidence claim fails.

In his third issue, Appellant claims his sentence of 20 to 40 years in prison for third-degree murder is excessive. As such, Appellant presents a challenge to the discretionary aspects of sentencing for which our standard of review is abuse of discretion. *Commonwealth v. Walls*, 926 A.2d 957, 961 (Pa. 2007). As this Court explained in *Commonwealth v. Moury*, 992 A.2d 162 (Pa. Super. 2010):

> An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:
>
> > [W]e conduct a four-part analysis to determine: (1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved

> at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).
>
> ***Commonwealth v. Evans***, 901 A.2d 528, 533 (Pa. Super. 2006), *appeal denied,* 589 Pa. 727, 909 A.2d 303 (2006) (internal citations omitted).

***Id.*** at 170.  Appellant filed a timely notice of appeal, preserved the issue in his post-sentence motion, and included a Rule 2119(f) statement in his appellate brief.   Therefore, we must determine whether Appellant has presented a substantial question for our review.

In ***Commonwealth v. Caldwell***, 117 A.3d 763 (Pa. Super. 2015) (*en banc*), this Court reiterated:

> In determining whether a substantial question exists, this Court does not examine the merits of whether the sentence is actually excessive.   Rather, we look to whether the appellant has forwarded a plausible argument that the sentence, when it is within the guideline ranges, is clearly unreasonable. Concomitantly, the substantial question determination does not require the court to decide the merits of whether the sentence is clearly unreasonable.

***Id.*** at 770 (quoting ***Commonwealth v. Dodge***, 77 A.3d 1263, 1279 (Pa. Super. 2018), *appeal denied*, 91 A.3d 161 (Pa. 2014)).  "The determination of what constitutes a substantial question must be evaluated on a case-by-case basis."   ***Moury***, 992 A.2d at 170 (citation omitted).  "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific

provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Id.* (internal citation and quotation marks omitted).

Here, Appellant asserts the trial court imposed "an unduly harsh sentence without consideration for the circumstances of the crime, appellant's remorse, his tragic childhood, or his severe mental health issues." Appellant's Brief at 25. "Insofar as Appellant claims the sentence is disproportionate to the offense and the trial court failed to consider mitigating factors, Appellant has raised a substantial question." *Commonwealth v. DiClaudio*, 210 A.3d 1070, 1075 (Pa. Super. 2019) (citing *Caldwell*, 117 A.3d at 770). We find that Appellant has arguably presented a substantial question. Therefore, we shall review his sentencing claim.

As this Court recognized in *Moury*:

"When imposing a sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Griffin*, 804 A.2d 1, 10 (Pa. Super. 2002), *appeal denied,* 582 Pa. 671, 868 A.2d 1198 (2005), *cert. denied,* 545 U.S. 1148, 125 S.Ct. 2984, 162 L.Ed.2d 902 (2005). "In particular, the court should refer to the defendant's prior criminal record, his age, personal characteristics and his potential for rehabilitation." *Id.* Where the sentencing court had the benefit of a presentence investigation report ("PSI"), we can assume the sentencing court "was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Devers*, 519 Pa. 88, 101–02, 546 A.2d 12, 18 (1988). Further, where a sentence is within the standard range of the guidelines, Pennsylvania law views the sentence as appropriate under the Sentencing Code. *See Commonwealth v. Cruz-Centeno*, 447 Pa. Super. 98, 668 A.2d 536 (1995), *appeal denied,* 544 Pa. 653, 676 A.2d 1195 (1996) (stating combination

- 10 -

of PSI and standard range sentence, absent more, cannot be considered excessive or unreasonable).

*Moury*, 992 A.2d at 171 (citation omitted).

As reflected in the record, the trial court had the benefit of a PSI, as well as a mental health evaluation, sentencing memoranda prepared by the parties, letters on behalf of Appellant, and letters addressing the impact on the victim's family. Trial Court Opinion, 2/24/21, at 10. The trial court noted an offense gravity score of fourteen and a prior record score of five. "The deadly weapon matrix recommends a guideline minimum range of two hundred and ten months to the statutory limit of two hundred and forty months." *Id.* The court considered Appellant's background, character, and rehabilitative needs, along with the PSI, which detailed the relevant information regard these factors, and imposed a sentence within the guidelines. *Id.* at 11. We find no abuse of discretion in the court's imposition of a sentence of 20 to 40 years in prison for third-degree murder. Appellant's sentencing claim fails.

Finding no merit in Appellant's issues, we shall affirm his judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/16/2021