J-S12045-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GEORGE PARKER | : | |
| | : | |
| Appellant | : | No. 2182 EDA 2024 |

Appeal from the Judgment of Sentence Entered November 22, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0002077-2021

BEFORE:  STABILE, J., McLAUGHLIN, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:                    **FILED MAY 13, 2025**

Appellant, George Parker, appeals *nunc pro tunc* from the aggregate judgment of sentence of 16½ to 40 years' incarceration, followed by 2 years' probation, imposed after he pled guilty to murder, generally, with the degree of guilt later determined by the court to be third-degree murder (18 Pa.C.S. § 2502(c)).  Appellant also pled guilty to carrying a firearm without a license (18 Pa.C.S. § 6106(a)(1)) and possessing an instrument of crime (18 Pa.C.S. § 907(a)).  On appeal, Appellant challenges the sufficiency and weight of the evidence to sustain the grading of his third-degree murder conviction, as well as the discretionary aspects of his sentence.  After careful review, we affirm.

On August 1, 2023, Appellant pled guilty to the above-stated offenses.  That same day, a degree of guilt hearing was conducted for Appellant's murder conviction.  At the hearing, the following facts were established:

[A]round 5:00 p.m. on September 30, 2019, Langdon Scott was inside the Alejandro Grocery Store at 750 West Luzerne Street in the City and County of Philadelphia when an altercation broke out between him and [Appellant].... Mr. Scott left the store, followed shortly by [Appellant], who had a gun in his hand. Mr. Scott was walking away and [was] on the sidewalk at 715 West Luzerne when [Appellant] shot him, he fell to the ground, and [Appellant] ran in the other direction, handing off the pistol to an individual in a burgundy sweatshirt. All of this was on video and was presented to the court. The parties stipulated to the testimony of Dr. Lindsay Simon of the Medical Examiner's Office, that, to a reasonable degree of medical certainty, the cause of death was a gunshot wound to the torso and the manner of death was homicide. The shooter in the video was identified as [Appellant] by Detective Matthew Dydak and Tiffany Dekeyser[,] who both knew [Appellant]. Appellant was arrested on May 29, 2020[,] at 1041 East Price Street.

Trial Court Opinion (TCO), 11/4/24, at 3.

Based on these facts, the court determined that Appellant's actions constituted murder of the third degree. On November 22, 2023, the court sentenced Appellant to the aggregate term set forth *supra*. He filed a timely post-sentence motion, which was denied on April 2, 2024. Appellant did not file a timely appeal.

However, on May 10, 2024, Appellant filed a petition under the Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, seeking the reinstatement of his post-sentence motion and appellate rights, which the court granted. Appellant filed a *nunc pro tunc* post-sentence motion on July 30, 2024, which the court denied on July 31, 2024. Appellant then filed a *nunc pro tunc* notice of appeal on August 16, 2024. He and the court thereafter complied with Pa.R.A.P. 1925. Herein, Appellant states three issues for our review:

I. Whether the evidence at [the degree of guilt hearing] was insufficient to find that … Appellant had the requisite *mens rea* for third-degree murder[,] as the evidence legally supports a finding of manslaughter[?]

II. Whether the verdict was against the weight of the evidence[,] as the court committed a legal error by finding … Appellant guilty of third-degree murder instead of voluntary manslaughter[?]

III. Whether the imposed sentence was excessively harsh[?]

Appellant's Brief at vii-viii.

Appellant first argues that the evidence presented at the degree of guilt hearing was insufficient to sustain the court's finding that he committed third-degree murder. According to Appellant, the evidence instead established that he "acted in [the] 'heat of passion' with no time to calmly reflect, or in 'imperfect self-defense,' either of which aligns with voluntary manslaughter rather than third-degree murder." *Id.* at 3.

First, as Appellant recognizes, *see id.* at 5, in ***Commonwealth v. Miller***, 987 A.2d 638 (Pa. 2009), our Supreme Court explained:

A person is guilty of "heat of passion" voluntary manslaughter if[,] at the time of the killing[,] he or she reacted under a sudden and intense passion resulting from serious provocation by the victim. ["]Heat of passion["] includes emotions such as anger, rage, sudden resentment or terror which renders the mind incapable of reason. An objective standard is applied to determine whether the provocation was sufficient to support the defense of "heat of passion" voluntary manslaughter. The ultimate test for adequate provocation remains whether a reasonable man, confronted with this series of events, became impassioned to the extent that his mind was incapable of cool reflection.

*Id.* at 649–50 (cleaned up).

Instantly, Appellant argues that he shot the victim "following a severe provocation and assault inside the … grocery store, which included an assault

on … Appellant's wife." Appellant's Brief at 4. He insists that, after this altercation, he had "no time for deliberation or a measured response[,]" or any "opportunity to 'coolly' or 'calmly reflect' on the threat or the anger arising from the attack or the assault on his wife" before he shot the victim. *Id.* at 5 (citing *Miller*, *supra*). Appellant maintains that "[t]he sudden and violent nature of the assault, coupled with the imminent danger to both … Appellant and his wife, created a scenario where a reasonable person's judgment could become impaired, leading to an impulsive and emotional response." *Id.* at 6. Thus, he concludes that "the facts of this case align more squarely with 'heat of passion' voluntary manslaughter[,]" rather than third-degree murder. *Id.*

Alternatively, Appellant avers that he shot the victim in imperfect self-defense.

> [A]n imperfect self-defense claim is imperfect in only one respect—an unreasonable rather than a reasonable belief that deadly force was required to save the actor's life. All other principles of justification under 18 Pa.C.S. § 505 must be satisfied to prove unreasonable belief voluntary manslaughter.

*Commonwealth v. Philistin*, 53 A.3d 1, 12 (Pa. 2012) (cleaned up). Section 505 states, in pertinent part:

> **(a) Use of force justifiable for protection of the person.--** The use of force upon or toward another person is justifiable when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force by such other person on the present occasion.
>
> **(b) Limitations on justifying necessity for use of force.--**
>
> ***
>
> (2) The use of deadly force is not justifiable under this section unless the actor believes that such force is necessary

- 4 -

to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat; nor is it justifiable if:

(i) the actor, with the intent of causing death or serious bodily injury, provoked the use of force against himself in the same encounter; or

(ii) the actor knows that he can avoid the necessity of using such force with complete safety by retreating, except the actor is not obliged to retreat from his dwelling or place of work, unless he was the initial aggressor or is assailed in his place of work by another person whose place of work the actor knows it to be.

18 Pa.C.S. § 505(a), (b).

Here, Appellant claims that his actions constituted imperfect self-defense because the victim assaulted Appellant and then said he was going to "return and kill … Appellant." Appellant's Brief at 7. According to Appellant, the "sudden and unprovoked violence" that resulted in harm to Appellant's wife, combined with the victim's "explicit threat of future violence[,]" resulted in "an immediate and highly charged situation, … which any reasonable person would perceive as beyond frightening." *Id.* Appellant claims that, in response to this frightening exchange, he shot at the victim from a distance, aiming "low" and "striking [the victim] in the hip, [which] strongly suggests that … Appellant's intent was merely to defend himself and not to kill or inflict serious bodily injury." *Id.* He argues that, given this context, he reasonably "believed that firing in the direction of the [victim] was justified[,]" even if unreasonable. *Id.*

In rejecting Appellant's claim that the evidence was insufficient to prove he committed third-degree murder, the trial court explained:

To sustain a conviction for third-degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought, that the defendant recklessly, knowingly or intentionally caused the victim's death. "This Court has long held that malice comprehends not only a particular ill-will, but … [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." *Commonwealth v. Fisher*, … 80 A.3d 1186, 1191 ([Pa.] 2013) ([quoting] *Commonwealth v. Santos*, … 876 A.2d 360, 363 ([Pa.] 2005); [*see also*] *Commonwealth v. Drum*, 58 Pa. 9, 15 (1868)). Third degree murder "is an intentional act, characterized by malice, that results in death, intended or not." … *Fisher*, … 80 A.3d at 1191. Malice for third[-]degree murder means the defendant consciously disregarded an extremely high risk that his actions might cause death or serious bodily injury. Furthermore, the factfinder may infer malice by considering the totality of the circumstances. *Commonwealth v. Thomas*, 656 A.2d 514, 516 (Pa. Super. 1995).

[Appellant] testified [on] his own behalf, stating he was in the store, when for no reason Mr. Scott came in and attacked him. [Appellant contended that, d]uring the melee, [Mr.] Scott hit his wife as well. Appellant testified [that] after the incident inside the store, he was going down the street when … [Mr. Scott] told [Appellant] he was coming back and [was] going to kill [Appellant], while pointing at [Appellant]. Appellant then testified he retrieved a gun and then shot [Mr. Scott]. The video was again played, and [Appellant] further testified that he felt his life was in danger and [stated that,] "I didn't know if the person would come back. The person said he'll come back and kill me." []N.T.[, 8/1/23, at] 19-25[]. [Appellant] further testified that:

Q. So you ran after him with a gun to scare him off?

A. Yes.

Q. When you fired the gun to just scare him, you fired it in his direction, not into the air. Is that fair to say?

A. I just fired it anywhere. It wasn't going toward him. I fired anywhere.

Q. So you didn't shoot at him[,] but it hit him?

A. It just hit him.

- 6 -

Q. Say that again.

A. It just hit him, when I shot, where he was shot.

[*Id.* at] 27-28[].

As to the sufficiency of the evidence [for] this murder, it is crystal clear that on September 30, 2019, [Appellant] stood on the sidewalk and shot at [Mr. Scott], striking [Mr. Scott], resulting in his death. [Appellant] admitted to doing the shooting. His claim that he was just trying to scare [Mr. Scott] does not ring true. He did not fire into the air or any safe area, but at the fleeing [Mr. Scott], and afterwards, handed off the gun and fled the scene. [Appellant's] testimony was not credible.

Clearly, reviewing all this testimony, in a light favorable to the Commonwealth as the verdict winner, the evidence was sufficient to convict [Appellant] of murder of the third degree, and [A]ppellant's claim of insufficiency fails.

TCO at 4-6.

We agree with the trial court that Appellant's sufficiency challenge is meritless. First, regarding his 'heat of passion' argument, Appellant offered no testimony to support his claim that he shot the victim while he was angry or enraged. Instead, when Appellant was asked what he was "feeling after the physical altercation stopped and [he was] separated" from the victim, he replied, "I just felt like my life was in danger. When the [victim] said he will come back and kill [me], I [didn't] take it as just a threat." N.T. at 24-25. This testimony indicates that Appellant shot Mr. Scott believing he had to do so to defend himself, not because he was so impassioned that his mind was incapable of cool reflection.

Second, Appellant's imperfect self-defense claim fails because he cannot demonstrate that he could not have safely retreated instead of shooting Mr.

Scott.  Appellant does not dispute that Mr. Scott was **walking away** from the store when Appellant shot him **from behind**.  Although Appellant claims that Mr. Scott had threatened to return and kill Appellant, Appellant does not explain why he could not have simply left the scene when Mr. Scott walked away, rather than shooting him in the back.

Appellant also insisted that he was not trying to kill Mr. Scott when he shot at him.  **See id.** at 25 (Appellant's testifying that he "didn't mean to try and kill [the victim].  The way I shot the gun was down.  It wasn't premeditated like I walked and killed him.  You can see I shot from a block away, I shot down.").  However, the trial court did not find credible Appellant's claim that he did not try to hit Mr. Scott when he shot at him.  **See** TCO at 6.

In sum, Appellant's sufficiency challenges to his third-degree murder conviction are unconvincing.  He presented no evidence or testimony to support his claim that he acted in the heat of passion, and the evidence demonstrated that Appellant could have safely retreated from the scene when the victim walked away, rather than shooting the victim in the back. Appellant's act of shooting at the victim was sufficient to show that he consciously disregarded an extremely high risk that the victim would suffer serious bodily injury or be killed by the gunshot.  Thus, his third-degree murder conviction is supported by sufficient evidence.

Next, Appellant challenges the weight of the evidence to sustain his third-degree murder conviction.

> A claim alleging the verdict was against the weight of the evidence is addressed to the discretion of the trial court. Accordingly, an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence. It is well settled that the jury is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses, and a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion.

***Commonwealth v. Houser***, 18 A.3d 1128, 1135-36 (Pa. 2011) (cleaned up).

Here, Appellant reiterates his sufficiency argument that he acted in the heat of passion, or in imperfect self-defense and, thus, "the trial court's finding that … Appellant acted with malice was so contrary to the evidence as to shock one's sense of justice." Appellant's Brief at 8. In rejecting this claim, the trial court explained:

> This court applied the appropriate standards when reviewing [Appellant's] claim that the verdict was against the weight of the evidence. Having reviewed the entire record, including a thorough reading of the trial transcripts and admitted exhibits, this court concludes that the verdict was not so contrary to the evidence as to shock one's sense of justice, nor was it so tenuous, vague and uncertain that it shocks the conscience of the court. To the contrary, the evidence in this case was compelling and substantial, and strongly supported the verdict. Accordingly, this claim of [Appellant] is without merit.

TCO at 8.

We discern no abuse of discretion in the trial court's decision. The court viewed a video of the shooting, which showed that Appellant shot at Mr. Scott as he was walking away from Appellant. Appellant could have retreated from

the scene rather than shoot Mr. Scott, and the court did not believe Appellant's testimony that he shot the gun merely to scare the victim, but did not intend to hit him. Appellant offered no testimony or other evidence to support his claim that he shot the victim in the heat of passion. Given these facts, we discern nothing shocking in the court's verdict, or any abuse of discretion in its decision to reject Appellant's challenge to the weight of the evidence.

Finally, Appellant argues that the court imposed an excessive sentence.

Challenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right. *Commonwealth v. Sierra*, 752 A.2d 910, 912 (Pa. Super. 2000). An appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction by satisfying a four-part test:

We conduct a four[-]part analysis to determine: (1) whether [the] appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether [the] appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Evans*, 901 A.2d 528, 533 (Pa. Super. 2006)…. Objections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the sentence imposed. *Commonwealth v. Mann*, 820 A.2d 788, 794 (Pa. Super. 2003)….

The determination of what constitutes a substantial question must be evaluated on a case-by-case basis. *Commonwealth v. Paul*, 925 A.2d 825, 828 (Pa. Super. 2007). A substantial question exists "only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Sierra*, *supra* at 912–13.

***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013) (quoting ***Commonwealth v. Moury***, 992 A.2d 162, 170 (Pa. Super. 2010)).

Here, Appellant has satisfied the first two requirements for raising a discretionary-aspects-of-sentencing claim. However, Appellant does not set forth, in a separate section of his brief, the required Rule 2119(f) statement. ***See*** Pa.R.A.P. 2119(f) ("An appellant who challenges the discretionary aspects of a sentence in a criminal matter shall set forth ***in a separate section of the brief*** a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of a sentence. The statement shall immediately precede the argument on the merits with respect to the discretionary aspects of the sentence.") (emphasis added). Instead, at the outset of his sentencing issue, Appellant simply acknowledges the substantial-question requirement, and then delves immediately into the merits of his sentencing challenges, arguing that his sentence is excessive because: 1) it exceeds "what was necessary to acknowledge the severity of the offense, ensure community protection, and facilitate … Appellant's rehabilitation," Appellant's Brief at 10; 2) it fails to take into account the mitigating fact that there was a "borderline question" of whether Appellant's murder charge should have been voluntary manslaughter due to his allegedly acting in the heat of passion, or in imperfect self-defense, ***id.***; and 3) Appellant showed remorse and accepted responsibility by pleading guilty, yet the court ignored these mitigating factors in imposing his sentence, ***id.*** at 10, 11. Appellant

does not explain why any of these claims constitute substantial questions for our review nor does he cite any legal authority to support such a conclusion.

However, the Commonwealth does not object to Appellant's failure to set forth a separate Rule 2119(f) statement. Thus, we will ignore this error and assess whether Appellant's arguments constitute substantial questions for our review. *See Commonwealth v. Anderson*, 830 A.2d 1013, 1017 (Pa. Super. 2003) ("If an appellant fails to comply with Pa.R.A.P. 2119(f) and the Commonwealth does not object, the reviewing Court may overlook the omission if the presence or absence of a substantial question can easily be determined from the appellant's brief.") (citation omitted).

First, Appellant's claim that the court failed to consider the mitigating factors of his remorse, acceptance of responsibility by pleading guilty, and the purportedly "close question" of whether he committed murder or voluntary manslaughter, does **not** constitute a substantial question for our review. *See Commonwealth v. MacNabb*, 819 A.2d 54, 57 (Pa. Super. 2003) ("[A]n allegation that the [trial] court did not consider certain mitigating factors does not raise a substantial question."); *Commonwealth v. Johnson*, 961 A.2d 877, 880 (Pa. Super. 2008) ("[A]n allegation that a sentencing court failed to consider or did not adequately consider certain [mitigating] factors does not raise a substantial question that the sentence was inappropriate"). However, Appellant's argument that the court did not take into account the factors under 42 Pa.C.S. § 9721(b) — *i.e.*, the protection of the public, the gravity of the offense, and the rehabilitative needs of the defendant — does amount to a

substantial question for our review. *See Commonwealth v. Riggs*, 63 A.3d 780, 786 (Pa. Super. 2012) (stating that an assertion that the "trial court failed to consider relevant sentencing criteria, including the protection of the public, the gravity of the underlying offense[,] and the rehabilitative needs of [an a]ppellant, as 42 Pa.C.S.[] § 9721(b) requires, raises a substantial question).

Nevertheless, no relief is due on the merits of Appellant's claim. Initially, we stress that

> [s]entencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Shugars*, 895 A.2d 1270, 1275 (Pa. Super. 2006).

Here, the trial court explained its sentencing considerations, as follows:

> "Our Supreme Court has held that where a pre-sentence report exists, we shall 'presume that the sentencing judge was aware of the relevant information regarding the defendant's character and weighed those considerations along with the mitigating statutory factors.'" *Commonwealth v. Miller*, 275 A.3d 530, 534 (Pa. Super. 2022); *Commonwealth v. Knox*, 165 A.3d 925, 930 (Pa. Super. 2017); *Commonwealth v. McKiel*, … 629 A.2d 1012, 1013-14 ([Pa. Super.] 1993) (quoting *Commonwealth v. Devers*, … 546 A.2d 12, 18 ([Pa.] 1988)). "Having been fully informed by the presentence report, the sentencing court's discretion should not be disturbed." [*Knox*, 165 A.3d at 930].
>
> A presentence report was prepared for this case, which was studied, along with all the evidence presented[. The court also] considered numerous factors, such as the nature of the crime,

[Appellant's] background, the likelihood of rehabilitation[,] and the need for the public to be protected from this behavior by [Appellant] again. The court specifically studied the mitigation factors presented in the pre-sentence report, as well as those presented during the sentencing hearing and in [Appellant's] mental health evaluation. The sentence imposed on [A]ppellant took into account all of those considerations.

Looking at the guidelines, [Appellant's] calculated prior record score was a RFEL. [Appellant] had a previous sexual assault as a juvenile, followed by multiple adult convictions[,] including receiving stolen property, possession of firearm prohibited, and three possession with intent to deliver convictions. The offense gravity score for third[-]degree murder is fourteen, giving a minimum guideline range of [222] months to the statutory limit of [240 months]. As such, the sentence was within the guidelines.

\*\*\*

This court examined [Appellant's] background, character[,] and rehabilitative needs, and the pre-sentence investigation report detailed the relevant information regarding these factors, all of which was considered.

\*\*\*

The court reviewed the mental health[,] pre-sentence investigation…, and mitigation report[s,] considered all the testimony and arguments of counsel[,] and imposed an appropriate sentence. The [court] considered [Appellant's] mental health and rehabilitative needs as well as his history, the need for the protection of the public and the gravity of the offense. In addition, a sentencing court has discretion to impose multiple sentences concurrently or consecutively. ***Commonwealth v. Reyes-Rodriguez***, 111 A.3d 775, 784-85 (Pa. Super. 2015) (citing ***Commonwealth v. Raven***, 97 A.3d 1244, 1253 (Pa. Super. 2014)).

TCO at 10-11. The court concluded that Appellant's sentence is not excessive

and should be affirmed on appeal. ***See id.*** at 11.

We agree. Clearly, the court considered the requisite statutory factors, including the severity of the offense, the danger Appellant poses to the community, and his rehabilitative needs. Additionally, the court took into account the mitigating circumstances of Appellant's case, his history and background, and his prior criminal record. The court considered a pre-sentence investigation report. The court was aware of Appellant's imperfect self-defense claim, but it rejected that argument and found him guilty of third-degree murder. Thus, the court did not act unreasonably by not mitigating Appellant's sentence based on his unsuccessful claim of self-defense. Ultimately, the court imposed a minimum sentence of 198 months' incarceration, which is less than the standard guideline range of 222 to 240 months. Given the record before us, Appellant has failed to demonstrate any abuse of discretion in the court's decision.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/13/2025